UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTHONY LYNN ASHLEY,<br><br>                    Petitioner,<br><br>vs.<br><br>WARDEN RAMIREZ,<br><br>                    Respondent. | Case No. 1:15-cv-00175-REB<br><br>**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL** |

Pending before the Court is Warden Ramirez's Motion for Summary Dismissal of the Petition for Writ of Habeas Corpus filed by Anthony Lynn Ashley. (Dkt. 12.) The motion is now fully briefed. (Dkt. 14, 15, 16.) All parties who have appeared in this case have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 10.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

The Court takes judicial notice of the records from Petitioner's state court proceedings lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

Carol Smith, who relied on Social Security disability income as a result of epilepsy and other health problems, lived in Boise's North End neighborhood. She was willing to take in anyone in need. All of the following people lived with her for various durations: Petitioner Anthony Ashley, who was Carol's daughter's former significant other, recently released from prison in Arizona; Carol's son-in-law James Allen Creel, who was a fugitive from the law on a DUI conviction; her 16-year-old grandson, Jonathan Smith, who had lived with his grandmother for most of his life; and a man named Lorenzo, whose story is unknown.

Carol cooperated with Petitioner to be the "straw man" in several gun purchases for him, because, as a convicted felon, he was prohibited from possessing firearms. Petitioner gifted Jonathan a Franchi shot gun, which made Carol uncomfortable. Carol eventually gave police information that Petitioner was a felon in possession of firearms. After police obtained a warrant to search Petitioner's bedroom in Carol's house, they found 18 firearms, over 5,000 rounds of ammunition, and "dozens of knives" in Petitioner's bedroom. (State's Lodging B-2.) Five of the guns and one knife were identified as weapons stolen from four vehicles parked outside homes in the North End. (State's Lodging A-4, p. 213.)

In a criminal action in the Fourth Judicial District Court in Ada County, Idaho, Petitioner was convicted by jury of five counts of grand theft by possession of stolen property (guns), with a persistent violator enhancement under Idaho Code §§ 18-2403(4) & 18-2407(1); six counts of unlawful possession of a firearm (five stolen guns + gun

given to Jonathan) under I.C. § 18-3316; and petit theft by possession of stolen property (knife), under I.C. §§ 18-2403(4) & 18-2407(2). The state district court sentenced Petitioner to prison terms of between one and thirty years. The judgment of conviction was entered on October 26, 2010.

Petitioner raised an excessive sentence claim on direct appeal. He raised a variety of claims in his post-conviction action, but his petition was summarily dismissed. Petitioner's appeal of his post-conviction dismissal was unsuccessful. The question at hand is whether Petitioner properly exhausted any of his federal claims in his direct appeal or post-conviction action before filing the Petition in this action. The Court also considers the merits of the Petition in the alternative.

## CONSIDERATON OF SUMMARY DISMISSAL MOTION

### 1. Standard of Law for Dismissal

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus without a formal response from the State when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

### 2. Procedural Default Standard of Law

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have fairly presented all his federal claims at least in a petition seeking review before that court. *Id.* at 847.

To fairly present his claims, a petitioner must assert the substance of his claims, including the "operative facts" and "legal principles" underlying each claim, to the state court. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, without more, are insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). In *Duncan v. Henry*, the United States Supreme Court clarified that state appellate courts must not be left to guess whether a petitioner is presenting a constitutional issue:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 4**

> If a habeas petitioner wishes to claim that an evidentiary ruling at a state
> court trial denied him the due process of law guaranteed by the Fourteenth
> Amendment, he must say so, not only in federal court, but in state court.

513 U.S. at 356-66.

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts (as discussed directly above); (2) when a petitioner has completely failed to raise a claim before the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Loveland v. Hatcher*, 231 F.3d 640 (9th Cir. 2000), the Court explained that "*if it is unclear* whether the state court dismissed the petition because of a state law procedural default or on the merits of the petitioner's federal constitutional claims, a federal court may review the merits of the claims presented." *Id*. at 643 (emphasis in original) (citing *Siripongs v. Calderon*, 35 F.3d 1308, 1371 (9th Cir. 1994)). If a state court writes that a petition is "denied both for reasons of procedural default and on the merits," as in *Siripongs*, then that is not a clear expression of procedural bar and the federal court may review the merits of the claim. *Loveland*, 231 F.3d at 643. However, if a state court "independently stated that [the] petition was procedurally barred because it

was untimely and then separately concluded that [the] claims were without merit," the decision is considered a clear expression of state procedural bar, which, if adequate and independent, will preclude federal habeas review. *Id*. at 643-44; *see also Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) (even if a state court reaches the merits of a federal claim in the alternative, federal review is barred "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision").

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule, even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id*. (internal quotation marks and alteration omitted).

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 6**

### A. *Petitioner's Presentation of Claims to the State Courts*

Petitioner filed an initial pro se petition for post-conviction relief. Petitioner was appointed a lawyer, who filed a motion to have the guns released for fingerprint testing, because Petitioner asserted that he had not touched the guns. Initially, that motion was made in the context of the direct appeal.  It was renewed in the post-conviction matter when it appeared that the appellate court was not going to act on the motion, because it was a more appropriate topic for post-conviction review. (State's Lodging E-2.) The state district court denied the motion, noting that "fingerprints are probative only of the existence of someone; their absence does not demonstratively show the absence of the individual." (*Id.*, pp. 15-16.) The state district court also ruled that Petitioner had not shown that testing was necessary for any of his claims. (*Id.*, p. 17.) Petitioner argued that trial counsel should have performed the fingerprint testing, because the guns may have showed fingerprints of the true perpetrator. (*Id.*, p. 26.)

At oral argument on the summary dismissal motion, Petitioner's counsel noted that his investigation of the case did not uncover any claims or evidence to supplement Petitioner's original pro se petition. (*Id.*, p. 25.) Therefore, counsel did not file an amended petition in the post-conviction matter.

### 3.  Claim (1): Due Process

Petitioner's first claim is that he was deprived of his due process rights under the Fifth (via the Fourteenth) Amendment. In his Petition, he asserted no facts to support this claim, but instead stated simply that the supporting facts "are in the transcripts and police

reports, and court records." (Dkt. 3, p. 6.) The Court determined that Petitioner could pursue a due process claim only to the extent that, in his direct appeal or his post-conviction action and appeal, he raised a federal due process claim on a specific set of facts, and pursued the claims through the level of the Idaho Supreme Court.

Petitioner's post-conviction claims were as follows: "The jury was bias[ed] against me. The judge was bias[ed] against me. The prosecution used false evidence against me. Witnesses lied on the stand." (State's Lodging E-1, p. 11.) He cited the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. (*Id*.) To contest various aspects of the trial, Petitioner attached various pages of handwritten notes he took throughout the trial. (*Id*., pp. 13-53.)

Petitioner, acting pro se, filed an appeal. He stated in his brief that due process requires an impartial jury and an opportunity to confront the witnesses against him. (State's Lodging F-2.) He cited the same provisions of the Constitution as in his post-conviction petition. In his opening brief, he gave examples of the violations alleged, but he did not specifically explain the basis of any of his claims.

The Idaho Court of Appeals determined that Petitioner's presentation of his claims was inadequate:

> Initially, we note that this Court will not consider an issue not supported by cogent argument or authority. *City of Meridian v. Petra Inc*., 154 Idaho 425, 450, 299 P.3d 232, 257 (2013). In this appeal, Ashley has not provided any argument as to why the district court erred by summarily dismissing his petition for post-conviction relief. Thus, we need not consider the issue on appeal. *Sparks v. State*, 140 Idaho 292, 298, 92 P.3d 542, 548 (Ct. App. 2004) ("A party waives an issue on appeal if either authority or argument is lacking.").

(State's Lodging A-4, p. 5.) After making this general statement, the Idaho Court of Appeals discussed three claims: the excessive sentence claim and ineffective assistance of trial and direct appeal counsel claims. The Court of Appeals did not discuss a due process claim.

Nothing in existing case law indicates that when Petitioner's case was decided in 2015, the Idaho appellate courts regularly adjudicated claims unsupported by clear facts and some type of argument, which means that the procedural bar invoked is "adequate" for purposes of federal procedural default purposes. *See Liponis v. Bach*, 234 P.3d 696, 698 (Idaho 2010) ("Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court."). No federal grounds for the bar are evident; therefore, the procedural rule is also independent. Accordingly, the Court concludes that the due process claim is procedurally defaulted.

### 4. Claim 2(A): Ineffective Assistance of Trial Counsel

Whether Petitioner's ineffective assistance of counsel claims are procedurally defaulted is a closer call. For that reason, the Court also reviews the claims on the merits. *See Lambrix v. Singletary*, 520 U.S. 518 (1997) (federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face

and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar").

### A.  Merits Standard of Law

Here, the ineffective assistance of counsel claims are potentially procedurally defaulted and could be heard de novo if cause and prejudice exists to excuse the default. The Court uses the de novo standard of review for the merits, rather than the more deferential and more difficult standard under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The case of *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance claims. *Strickland* provides that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must proceed with the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

The *Strickland* Court outlined how to use the factors of deficient performance and prejudice to assess an ineffective assistance claim:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of

Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

Prejudice under these circumstances means there is a reasonable probability that, but for errors of counsel, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

### B.  State Court Action

Petitioner's second claim is that his trial counsel was ineffective for several different reasons. On initial review in this action, the Court determined that, to the extent Petitioner properly raised these claims in state court, he could proceed on the same claims in this action. That is the threshold question.

Petitioner included only these ineffective assistance claims in his post-conviction action:

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 11**

- His lawyer failed to adequately confer with him before trial and failed to send an investigator.

- His lawyer failed to obtain any scientific evidence, fingerprint, handwriting, DNA, which Petitioner requested.

- His lawyer failed to object to obvious prejudicial statements and to basically mount any defense.

In his attachments to his appellate brief, Petitioner presented these ineffective assistance claims, which are different from those he presented in the state district court, above:

- His lawyer improperly implied his guilt on July 20, 2010.

- His lawyer should have impeached all witnesses caught in lies and contradictions.

- His lawyer should not have allowed the prosecutor to dominate the case with massive misconduct without objecting.

- His lawyer should have objected to the biased jurors.

- His lawyer should have mentioned that the shotgun was stolen, but did not because it conflicted with the prosecutor's timeline theory (and the timeline theory was derived from the forged document received from the informant (blue notebook)).

The Idaho Court of Appeals addressed one ineffective assistance claim on appeal as an example of the inadequate briefing:

> Ashley's assertions relating to defense counsel in the petition and petition's affidavit are bare assertions lacking specificity and do not make a prima facie case of ineffective assistance. For example, in the petition, Ashley states that defense counsel "Failed to adequately confer with me before Trial and Failed to Send Investigator." Furthermore, the initial affidavit does not explain how Ashley was prejudiced by defense counsel's alleged deficient performance. Similarly, Ashley's contentions in the affidavit opposing the motion for summary dismissal that relate to defense counsel do not state how Ashley was prejudiced by defense counsel's alleged deficient performance and are also bare assertions. Therefore, the district court properly summarily dismissed Ashley's ineffective assistance of

counsel claim because there is no genuine issue of material fact, and the
State is entitled to judgment as a matter of law.

(State's Lodging F-4, pp. 5-6 (internal citations omitted).)

The Idaho Court of Appeals affirmed the summary dismissal of the post-conviction petition because Petitioner failed to support any of his claims with sufficient facts, which is a procedural defect. The court did not specifically address any of Petitioner's other ineffective assistance claims. Therefore, with the possible exception of the "failure to confer and investigate" claim, the ineffective assistance claims brought in the federal petition (some of which are different from those above) are procedurally defaulted.

The Court alternatively will address the merits of Petitioner's claims.

### C.  Trial counsel failed to confer with Petitioner

Petitioner asserts that trial counsel did not confer with him enough and did not send an investigator. To the extent that the Idaho Court of Appeals adjudicated this claim on the merits, it concluded that, even if counsel had failed to confer, Petitioner pointed to no harm to his defense resulting from the lack of communication. Petitioner's briefing in this case likewise is devoid of any details of what Petitioner and counsel would have discussed and what changes to the defense would have been made if additional consultations or investigations had occurred. In examining the record independently, this Court finds nothing that would indicate a reasonable probability of a better outcome based on more attorney-client conferences or further investigation in this case. This claim is without merit.

MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 13

### D.  Trial counsel refused to order scientific tests (fingerprints)

Petitioner argued that trial counsel should have performed fingerprint testing, because the guns may have showed fingerprints of the true perpetrator. When Petitioner tried to have the testing done on appeal or during post-conviction review, the state district court denied the motion, noting that "fingerprints are probative only of the existence of someone; their absence does not demonstratively show the absence of the individual." (*Id.*, pp. 15-16.)

As to Petitioner's desire to have had numerous technical tests performed (fingerprinting, DNA analysis, and handwriting analysis) prior to trial, the Court concludes that Petitioner is viewing the facts of his case in an unrealistic manner. It was no coincidence that the six stolen weapons were found in Petitioner's bedroom. Many different pieces of circumstantial evidence fit together like the pieces of a puzzle, all pointing to Petitioner as a professional thief. Caroline Zipp, a Havenwood caregiver who provided homecare services to Carol Smith about six hours per week, testified at trial that Petitioner told her that he cleaned his guns with oils so that "[y]ou can't see fingerprints on [them]." (State's Lodging A-4, p. 568.) There is little to no evidence in the record to support a claim that fingerprints on the gun would point the way to a different common thief for all six stolen weapons.

The record established through witness testimony that Petitioner's fingerprints would not be on the weapons, because he extensively cleaned the guns in his possession. Petitioner has provided no other motive or means to connect the six stolen weapons to someone else, such that testing the guns for an alternative perpetrator's fingerprints or

DNA would have made sense. Accordingly, trial counsel did not perform deficiently, and no prejudice occurred, from the lack of testing. In fact, Petitioner's defense was aided by the *absence* of testing, because Petitioner's counsel used it on cross-examination of the police officers to suggest that their investigation was less than thorough.

### E.  Trial counsel failed to mount any effective defense

Petitioner alleges that trial counsel was ineffective for failing to present an effective defense. After a careful review of the record, the Court concludes that trial counsel's theory of the case—that Carol, Jonathan, James Creel, and Caroline Zipp were in a conspiracy to frame Petitioner for some other unknown criminal activity they were involved in—was among the best defense strategies that could be crafted from the facts of the case that otherwise pointed to Petitioner as the thief.

Counsel capitalized on the fact that the case was based solely on circumstantial evidence. He highlighted the fact that—when police had found Petitioner wandering in a closed park about midnight, wearing camouflage and a heavy coat on a warm evening—Petitioner had only five knives on his person (no guns) and no "slim jims" (screwdrivers, or other devices used to break into cars). When Petitioner was searched by police after having Carol try to purchase a gun for him on another occasion, he likewise had only the five knives his person. Counsel argued that because the guns were never found on Petitioner's person, he did not ever possess the guns, and further that because tools of theft were never found on his person, he was not the thief.

The four witnesses for the State who had lived with or spent time with Petitioner each had credibility issues, anomalies, or questionable (including criminal) activities that were raised at trial—factors which tended to support counsel's chosen theory of defense. The record reflected that Carol had lied to police. Each day she came to court she was wearing camouflage or carrying a camouflage bandana, apparently to make some sort of statement with her dress. (State's Lodging A-5, p. 42.) James Creel came to testify wearing his prison garb because he had been apprehended by police and imprisoned. Jonathan admitted he had a court-ordered psychosocial rehabilitation specialist assigned to him because he "always" fought with his grandmother. (State's Lodging A-4, p. 298.) Both Carol and Caroline Zipp had facilitated Petitioner's purchases of weapons (Carol purchased the guns and Caroline drove them to and from the gun shops), and thus they both were implicated in aiding a felon to possess weapons. All these facts were laid before the jury for its consideration; thus, counsel was not ineffective in relying on a defense that placed blame on these four individuals who could have had access to Petitioner's bedroom.

An "effective" defense does not always equal a winning defense. Here, the evidence pointed against Petitioner not because of any unfairness, but simply because he chose to do what he chose to do, and his only friends chose to turn State's evidence. That is not his attorney's fault. No combination of deficient performance and prejudice exists in the record to support this claim.

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 16**

> ### F.  Trial counsel improperly implied Petitioner's guilt on July 20, 2010, and should have objected to the biased jurors; and trial counsel failed to object to obvious prejudicial statements by the prosecutor, judge, and witnesses

Petitioner alleges in his Petition: "The jury was bias [sic] against me from their own statements in the transcripts, the prosecutor used my prior felony record to convict me and preducials [sic] statements (prosecutorial missconduct [sic])." (Dkt. 3, p. 7.) Many of Petitioner's objections in this case center on what seems the obvious fact that, because some of the charges were "felon in possession of a weapon," the State was permitted to bring forward and required to prove that Petitioner had been convicted of prior felonies. Therefore, from the very beginning of trial, during jury voir dire, it was important for Petitioner's counsel to probe the jury regarding whether they held biases against Petitioner in the *current* action because he had been convicted of felonies in the *past*.

Defense counsel attempted to seat the most open-minded jurors possible. It was not deficient performance to ask the jury questions to probe whether they had a bias against felons:

- "Do you think that a person who has been convicted of a felony is likely to commit another crime?"

- "If you hear evidence that Anthony has previously been convicted of a felony, in your mind, does that make him any more or less guilty of the crimes he is charged with in this case?"

- "So if all you knew about a person was that they had been convicted of a felony, what does that tell you about that person?"

(State's Lodging A-4, pp. 149-151.)

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 17**

Because Petitioner was a convicted felon, during voir dire and trial, counsel's job necessarily focused on damage control. For example, Petitioner alleges that his lawyer "improperly implied [Petitioner's] guilt on July 20, 2010." In pretrial conferencing, Petitioner's counsel tried to persuade the prosecutor and the Court to allow a stipulation regarding the prior felonies, rather than requiring the prosecutor to put on proof of the detail of the prior felonies. This would have limited damaging evidence presented to the jury. However, the prosecutor refused to *stipulate* (which means *agree*), and no court can force a party to agree. However, to reduce the impact of the prior convictions, the court limited the prosecutor to proving what is required by the jury instructions: "the nature of the offense, the code section under which it falls, and the fact that it was a felony under the law of whatever state it occurred in." (State's Lodging A-4, p. 185.) There is no ineffectiveness of counsel, no misconduct of the prosecutor, and no bias of the judge evident in these facts.

### G. Trial counsel should have impeached all witnesses caught in lies and contradictions

As noted above, the credibility of the State's witnesses was clearly in question after the totality of testimony on direct and cross-examination. In fact, in closing argument, the prosecutor agreed that credibility was a question, commenting, "Is Carol perfect? Is Carol pristine? No. She most certainly is not." (State's Lodging A-5, p. 36.) The jury was the factfinder and the judge of credibility in this case. The jury was free to reject the witnesses as noncredible, or to accept them with all the other evidence pointing to Petitioner as the thief. That the case didn't end in acquittal does not mean that trial

counsel performed deficiently in his handling of the adverse witnesses. Petitioner has failed to point to anything in particular to show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

### H.  Trial counsel should not have allowed the prosecutor to dominate the case with massive misconduct without objecting

Petitioner alleges that his defense counsel allowed the prosecutor to "dominate the case with massive misconduct" without objection. Petitioner's briefing in the Idaho Court of Appeals and here is too vague to discern any prejudicial misconduct of the prosecutor, massive or otherwise, and the Court has looked beyond the briefing to Petitioner's several laundry lists of objections elsewhere in the record, such as that attached to his original post-conviction petition. For example, Petitioner asserts that the prosecutor should not have attributed ownership to him of a blue notebook containing an accounting ledger of handwritten and adding machine tape figures (that the witnesses said were Petitioner's records of his stolen goods each night). Likewise, the prosecutor should not have said that he was found in possession of the firearms, because he never had a weapon on his person and he was not in his bedroom when the weapons were found.

However, defense counsel need not have interjected numerous objections that would serve no purpose except to underscore the obvious—that the prosecutor was presenting the State's case in a light most favorable to the State based on the testimony of the witnesses—that Petitioner kept the notebook with help from Carol, that he came home from being out all night "after work" with new weapons he showed to the witnesses even though he was never employed, that he had money to purchase new

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 19**

weapons even though he was never employed and received only a meager sum of food stamps per month, and that multiple police officers testified about Petitioner's bedroom full of weapons, including the five stolen guns and the stolen knife. Numerous objections about semantics often serve only to annoy the jury.

In general, it *does* appear from the transcript that the State dominated the case— but that is what it must do because it bears a heavy burden of proof in criminal cases. Petitioner chose not to testify, and his counsel put on no witnesses. As he stated in opening argument, Petitioner's counsel clearly intended to put on a defense that held the prosecution to its burden of proof and planted questions in the jurors' minds about the strength of the evidence presented. In all the years since the trial occurred, Petitioner has come forward with no alternative story, alibi, or witness statements to show that he was not the thief. Petitioner did not have a job. Hence, he could not call in any witnesses to testify of his presence or trustworthiness at work during the "graveyard shift." Petitioner did not seem to have friends other than the persons who turned and testified against him. Nor has Petitioner identified any other class of persons or type of evidence that could have made a difference in his case. Therefore, this ineffective assistance claim is without merit.

### I. Trial counsel should have mentioned that the shotgun was stolen, but he did not, because it conflicted with the prosecutor's timeline story

The prosecution chose to present its case by showing a timeline consisting of events recounted by witnesses and reports of the weapons being stolen by the owners.

Petitioner makes a frivolous argument that his trial counsel should have brought forward facts showing that the Franchi shotgun that Petitioner had given Jonathan for Christmas was stolen outside the timeframe of the prosecutor's argument—that it had been stolen from a parked car in Arizona much earlier than the Idaho thefts. The owner never reported the theft because he thought that friends of his sister had stolen the gun. Petitioner gleans this information from a police investigative report. (Dkt. 16-2, p. 3.)

Such evidence would have harmed Petitioner's case. Boise police officers who testified at trial said that they did not find the Franchi shotgun on their stolen weapons database, and Carol Smith testified that when she took the shotgun to the police department to check to determine whether it had been stolen, it again did not appear on the list of stolen firearms. This left the impression that Petitioner had not stolen the Franchi. Had Petitioner's counsel raised the fact that it was stolen at another time, it may have opened the door for the prosecutor to show that Petitioner, who recently had been released from prison in Arizona, was in possession of a gun that had been stolen out of a parked car in Arizona—the same modus operandi used in the Idaho thefts—all weapons stolen from parked cars in the general vicinity where Petitioner lived (he had no car). Because introduction of the fact that the Franchi shotgun was stolen would have harmed, not helped Petitioner's case, the claim is without merit.

### J. Trial counsel waived the preliminary hearing

Petitioner alleges that his lawyer waived the preliminary hearing without Petitioner's knowledge or consent. However, the record reflects that a preliminary

hearing was held on February 26, 2010, at which time eight witnesses testified, and Petitioner was held to answer to eleven felony counts. (State's Lodging A-3.)

Petitioner is confused, because his lawyer made a communication error. It is clear from the context of Petitioner's case that his counsel appeared alone to request a continuance for a *different* client's preliminary hearing in the midst of Petitioner's jury trial, and mistakenly composed and sent the letter to Petitioner stating that *his* preliminary hearing had been continued to August due to counsel's being "in the middle of a jury trial" (Petitioner's jury trial), rather than addressing it to the other client. (Dkt. 16-2, p. 5.) There is no evidence in the record supporting Petitioner's claim that his preliminary hearing was waived—he, in fact, had a preliminary hearing. This claim is without merit.

### 5. Claim 2(B): Ineffective Assistance of Appellate Counsel

Petitioner also alleges that direct appeal counsel was ineffective for failing to bring any meritorious issues on appeal, instead only bringing a "frivolous" claim of abuse of discretion in sentencing.

The *Strickland* principles also apply to determining ineffective assistance of appellate counsel claims. To show prejudice on appeal, a petitioner must show that his attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *See Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission would have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a

result of it not having been raised.  *See Miller*, 882 F.2d at 1435. "Effective legal

assistance" does not mean that appellate counsel must appeal every question of law or

every nonfrivolous issue requested by a criminal defendant.  *Jones v. Barnes*, 463 U.S.

745, 751-54 (1983).

The Idaho Court of Appeals affirmed the summary dismissal of this claim because

Petitioner did not provide by affidavit or admissible evidence any grounds supporting his

assertion that counsel's performance was deficient or that Petitioner's appeal was

prejudiced. Here, Petitioner points to no claim that should have been brought on appeal

that would have been a better choice than the state law sentencing claim that was brought.

To the extent that the Idaho Court of Appeals rejected this claim for not meeting

the procedural requirements of a post-conviction petition, it is procedurally defaulted. To

the extent that it is before this Court on its merits, it fails, for lack of a showing of

deficient performance or prejudice on appeal.

### 6.  Claim (3)(A): Excessive Sentence

#### A.  *Procedural Default*

Petitioner's third claim is an Eighth Amendment excessive sentence claim. He

asserts that it was constitutional error for the Court to sentence him to up to thirty years

for a property crime. Petitioner's direct appeal "excessive sentence" claim was based

only on state law. He did not mention the Eighth Amendment or the United States

Constitution, and the Idaho Court of Appeals considered only state law in rejecting

Petitioner's claim. (State's Lodgings B-1 & B-4.)

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 23**

Petitioner again raised an excessive sentence claim in his post-conviction action, this time based on the Eighth Amendment. The Idaho Court of Appeals affirmed the state district court's dismissal of the claim as barred by res judicata. In Idaho, res judicata bars any claim that was or could have been brought. For federal habeas corpus purposes, if the claim was actually brought, then a res judicata decision in a second round of state court actions means that the claim is properly exhausted. If the claim is barred because it could have been, but wasn't brought, then the claim is procedurally defaulted. Here, the Idaho Court of Appeals determined "For the excessive sentence claim that the district court dismissed on the grounds that res judicata applied, the claim is barred by I.C. § 19-4901(b), as the claim could have been raised on direct appeal (as it actually was)." (State's Lodging F-4, p. 5.) Therefore, it appears either that the claim was denied on the merits in the direct appeal, which opens the door to federal habeas review under the AEDPA deferential standard.

### B.  Merits

The Court now considers whether Petitioner's sentencing claim has merit.

### (1) Standard of Law

Where the petitioner challenges a state court judgment in which the petitioner's federal claims were adjudicated on the merits, then Title 28 U.S.C. § 2254(d), as amended by AEDPA, applies. Title 28 U.S.C. § 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 24**

1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

(2) <u>Discussion</u>

For the felony convictions, Petitioner was sentenced to concurrent terms of 30 years with 15 years fixed for one of the grand theft by possession counts, with a persistent violator enhancement; 10 years fixed for each of the other four grand theft by possession counts; and 5 years fixed for each of the six counts of unlawful possession of a firearm. (State's Lodging B-2.) It is undisputed that Petitioner was sentenced within the statutory limits for his convictions. The Idaho Court of Appeals also considered the length of the entire sentences when determining whether Petitioner's sentences were excessive. (State's Lodging B-4.)

On AEDPA review of a sentence on constitutionality grounds, a petitioner cannot succeed unless he can point to a United States Supreme Court supporting his position that his sentence is unconstitutionally excessive. The United States Supreme Court has reviewed cases with sentences arguably much harsher than Petitioner's, and has not deemed any similar punishment cruel and unusual. In *Rummel v. Estelle*, 445 U.S. 263, 274 n.11 (1980), it did not disturb a sentence of life with the possibility of parole for a recidivist offender for the crimes of fraudulent use of a credit card to obtain $80 in goods and services, passing a forged check for $28.36, and obtaining $120.75 by false pretenses.  In doing so, the Court cited as an example of a disproportionate sentence, "if a legislature made overtime parking a felony punishable by life imprisonment." *Id*.

In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), the Supreme Court upheld a Michigan court judgment sentencing the defendant to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine. In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court held that two consecutive sentences of 25 years to life in prison for a "third strike" provision of state law for stealing $150 worth of videotapes did not violate the gross disproportionality principle and did not warrant habeas corpus relief. Finally, in *Ewing v. California*, 538 U.S. 11 (2003), a life sentence was affirmed where the defendant was convicted of felony grand theft for stealing three golf clubs, worth $399 apiece.

There is no case with facts sufficiently similar to Petitioner's that would support his claim that the Idaho Court of Appeals' decision was contrary to or an unreasonable application of the law.  Therefore, Petitioner's claim is alternatively denied on the merits.

7.  **Claim 3(B): Equal Protection - Sentencing**

Petitioner's excessive sentencing claim also contains a reference to an equal

protection argument. He argues that convicts who have committed rape, lewd conduct, or

violent crimes that are a danger to society have been sentenced to lesser sentences than

his. However, Petitioner did not present an equal protection argument in support of his

excessive sentence claim in state court.  As a result this claim is procedurally defaulted.

Alternatively, this claim is without merit on de novo review. Under the Equal

Protection Clause, "all persons similarly circumstanced shall be treated alike" by

governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).

However, "[t]he Constitution does not require things which are different in fact or

opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S.

141, 147 (1940). A defendant who alleges that his sentence violates equal protection has

the burden of proving "the existence of purposeful discrimination." *Whitus v. Georgia*,

385 U.S. 545, 550 (1967).

No precedent supports Petitioner's position that his sentence violates equal

protection principles based on a comparison between property crimes and crimes of

violence against a person. There is no precedent demonstrating that sentencing judges

should make such comparisons in sentencing, rather than using the statutory guidelines

applicable to the crime that was committed. *See* Idaho Code § 19-2521, *et seq*. (criteria

for placing defendant on probation or imposing imprisonment, mental health

considerations, etc.). State legislatures decide upon minimum and maximum sentences

for various crimes, and in the absence of constitutional infirmities judges must sentence

within those terms, taking into consideration factors such as the "past life and habits of a particular offender." *Williams v. Illinois*, 399 U.S. 235, 243 (1970).

Petitioner has not shown that other persistent violators with similar crimes and backgrounds have been sentenced differently. Simply based on the record in this case, Petitioner's sentence was warranted. Therefore, his equal protection claim fails, either on a classification or "class of one" basis.

### 8.  Claim 4: Equal Protection - Trial

Petitioner's fourth claim is a Fourteenth Amendment equal protection claim regarding his trial, which appears to be rooted in allegations of a widespread conspiracy theory that the jury and judge were biased against him, that the prosecutors used false evidence, that the witnesses lied on the stand, and that the damning evidence against him was either handed to police or placed in the house by the conspiring witnesses. Petitioner asserts he was not treated fairly because of the widespread conspiracy against him. In his Reply, he also adds that he was convicted because he was born with brown skin, and the jurors had white skin. (Dkt. 16.)

These claims were not presented to the Idaho Supreme Court and are procedurally defaulted. They are also insufficient as a matter of law when examined on their merits. There is insufficient evidence in the record showing that the judge, prosecutor, defense attorney, voir dire panel, or selected jurors were biased against him on the basis of race or skin color. There is nothing to show that Petitioner was otherwise treated unfairly or unequally based on any other classification or under a "class of one" theory.

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 28**

### 9.  Cause and Prejudice

#### A.  *Traditional* **Coleman** *Cause and Prejudice*

A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986)

Ordinarily, to show "*cause*" for a procedural default, petitioner must prove that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Id.* at 488. To show "*prejudice*," a petitioner must show "not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner alleges that some of his claims are defaulted because of ineffective assistance of direct appeal counsel. However, the direct appeal counsel claim itself is procedurally defaulted for failure to properly present it to the state courts. A procedurally defaulted ineffective assistance claim may be used as "cause" to excuse the procedural default of another defaulted claim only if Petitioner can first show cause and prejudice for the default of the direct appeal counsel claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Petitioner has not satisfied either of these standards; therefore, the procedural default of the claims set forth above remains unexcused.

Nothing in the record supports a conclusion that there is cause and prejudice for the default of the ineffective assistance of direct appeal counsel claim. Therefore, it

cannot be used as an excuse for the default of any other claim that might have been brought on direct appeal.

### B. *Martinez v. Ryan*

The so-called *Martinez v. Ryan* exception permits the district court to hear procedurally defaulted claims of ineffective assistance of trial counsel, 132 S.Ct. 1309, 1320 (2012), and ineffective assistance of direct appeal counsel. *See Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013). *Martinez* does not apply to post-conviction appeals, only original post-conviction actions.

As to any claims that were not brought in the original post-conviction action, Petitioner must show that the ineffectiveness of his attorney caused the default of any ineffective assistance of trial counsel claims. Ineffectiveness mean that post-conviction counsel performed deficiently under *Strickland v. Washington*.

In addition, Petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Martinez*, 132 S. Ct. at 1318-19. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id*.; *see Strickland*, 466 U.S. at 695-96.

As cause for the default of his claim, Petitioner asserts: "I am ineffective so that should fall under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012)." However, even though Petitioner prepared his petition, counsel assisted him in the initial post-conviction proceedings. In addition, the claims were defaulted on appeal because Petitioner did not

explain the factual basis of each claim and how his defense was harmed. Claims that are defaulted on post-conviction *appellate* review are beyond the scope of *Martinez*.

In addition, Petitioner's claims are not substantial, as discussed at length in the merits analyses above. The Court is mindful that under a de nova review, the standard for a showing of *Martinez* "substantiality" is somewhat lower than a showing of *Strickland* ineffective assistance.  But Petitioner has brought forward almost nothing to show either deficient performance or prejudice, and the Court finds the claims fail under either the lower or the higher standard.

### 10. Miscarriage of Justice

#### A. Standard of Law

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496.

To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Where the petitioner pleaded guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084

(9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

## B.  Discussion

Petitioner asserts that he is actually innocent. He repeats his assertion that, had the guns been tested, they would not have shown his fingerprints. However, the entirety of the record, as summarized above, makes it clear that Petitioner's profession was thievery—and he was very adept at it. Petitioner was careful not to leave fingerprints at the scene of his crime, he knew how to avoid car alarms, and he was careful to clean off the fingerprints from his stolen guns with oil.

Sufficient evidence points to Petitioner as the perpetrator. The contents of the blue notebook accounting ledger of Petitioner's daily "work" that Carol helped Petitioner keep show his habit of committing different thefts when he regularly left the house between midnight and 5:00 a.m.[1] And, yes, while police officers never saw Petitioner with the notebook in his hand, it is clear from the totality of the state court record that it belonged to Petitioner and was a record of his crimes, which he thought of as a record of his work.

---

[1]    Petitioner urges that, because the witnesses could not each pinpoint the exact time he left and returned from the household each night, their testimonies that he left the house in the middle of the night and returned in the early morning show that they were all lying. However, that is not how a trial works. Memories may be inexact as to things and times that happen when a person is trying to sleep, and  the jurors were able to consider such possibilities when weighing what various witnesses had to say about roughly the same facts, and to determine credibility accordingly.

Further, Petitioner has no new *Schlup* evidence to show actual innocence, and it is remote that Petitioner could even do so, given the strength of the prosecution's circumstantial evidence in this case. Accordingly, the Court rejects Petitioner's claim of actual innocence as a gateway to hear any of his defaulted claims.

### 11. Conclusion

Petitioner has asked the Court to liberally construe his claims, which the Court has done. The Court has searched the entire record to determine whether he should be permitted to proceed on any claims that are procedurally defaulted, or whether he should be granted relief on those that may have been exhausted properly. The Court is aware that inmates have limited legal knowledge and resources; therefore, the Court conducts its own legal research and has no expectation that inmates will be able to cite to case law.

Nonetheless, on this record and the applicable law, the Court is convinced that Petitioner has failed to articulate how his constitutional rights were violated--not because of his lack of legal knowledge, but because there are no such violations. There is no fit here to Petitioner's analogy that he is David fighting Goliath; rather, his large collection of weapons, his accounting records, his supply of money, and his ability to escape detection tend to show that he is an actual thief, having left many victims with not even the resources to regain their personal property from Petitioner. Four fortunate victims were able to recover their weapons here. One testified how surprised he was, stating, "I thought I would never see those again." (State's Lodging A-4, p. 214.)

The very purpose of the persistent violator statute that permits the State to imprison Petitioner for an otherwise longer period is to protect the public from repeated losses caused by persons who, for whatever reason, are unable to conform themselves to the rules of society.[2] Thievery is not a job or a career, although in Petitioner's instance it may well have been his specialty. The Petition for Writ of Habeas Corpus will be denied and dismissed, and a certificate of appealability will not issue.

---

[2]     Petitioner previously was convicted of grand theft by possession of stolen property in Idaho in the early 1990s. His conviction was affirmed by the Idaho Court of Appeals in 1994. *See State v. Ashley*, 889 P.2d 723 (Idaho Ct. App. 1994). In affirming the sentence of seven years with three years fixed, the Court of Appeals observed:

> Ashley was 33 years old when he was sentenced in this case. A review of the presentence report reveals a lengthy criminal record. When Ashley was 18 years old, he was convicted of his first felony, a burglary, and received three years' probation. While on probation, at age 20, he was convicted and incarcerated in a Wisconsin reformatory for two years for his second felony, strong arm robbery. A year and a half after his release, Ashley was convicted in Arizona of two more felonies, theft and criminal damage. Less than three years later, Ashley was convicted in California of his fifth felony, possession of a bad check. One year later, again in Arizona, he received his sixth felony conviction, for larceny, and was placed on probation. Four years later, in Oregon, he was convicted of the seventh felony, unauthorized use of a motor vehicle, and was sentenced to six months in jail. Two years later, in Boise, he was convicted of the present charge of grand theft. While awaiting sentencing on this matter, Ashley was charged with his ninth felony, burglary. The record does not indicate the disposition on that pending charge. During the intervening sixteen-year period since Ashley turned 18, Ashley has been charged with 60 other violations, some being misdemeanors as well as several felonies, resulting in a variety of dispositions including 12 dismissals and 10 probations. In addition to his criminal record, Ashley admitted to abusing an assortment of drugs: speed, heroin, cocaine and marijuana, which he used every day when financially able.

> In light of Ashley's extensive criminal history and numerous attempts at rehabilitation through probation, the decision to impose a sentence of seven years with a fixed three-year minimum period of confinement on his conviction for grand theft and as a persistent violator, was reasonable.

889 P.2d at 727.

**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY DISMISSAL - 34**

# ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 12) is GRANTED.

2. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED and DISMISSED with prejudice.

3. The Court concludes that its resolution of this habeas matter is no reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  March 29, 2017

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge